IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO


MARK F. COBLE,

        Plaintiff,

v.                                          CIV No. 12-178 LH/WDS


NATIONSTAR MORTGAGE, LLC,
JASON YEAGER, CARLOS ALBO,
SONIA PASILLAS, ELIOT ROBINSON,
MEGAN STIMSON, SONYA BROOKS,
AMADA SMITH and DOES,

        Defendants.


**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants' Motion for Judgment on the Pleadings, (Doc. 22), filed May 14, 2012. The Court, having considered the pleadings submitted by the parties, the briefs of counsel, and otherwise being fully advised, finds that the motion is **well-taken** and shall be **granted**.

**I.    BACKGROUND**

The following facts are taken from Plaintiff's Complaint[1] (Doc. 1) and are construed in the light most favorable to Plaintiff:

---

[1] Plaintiff has attached to his Complaint various exhibits, which the Court considers in deciding the present motion for judgment on the pleadings. Although, ordinarily, consideration of material outside of the pleadings requires the court to convert a motion into one for summary judgment, *see* Fed. R. Civ. P. 12(b), "[e]xhibits attached to a complaint are properly treated as part of the pleadings for purposes of ruling on a motion dismiss." *Tal v. Hogan*, 453 F.3d 1244, 1265 (10th Cir. 2006); *see also Jacobson v. Deseret Book Co.*, 287 F.3d 936, 941-42 (10th Cir. 2002) ("In addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claims and the parties do not dispute the documents' authenticity.")

1

On March 26, 2008, Plaintiff obtained a loan from First Horizon Home Loans, a Division of First Tennessee Bank, N.A. ("First Horizon"), in the amount of $237,600.00, which was secured by a Mortgage on the real property located at 4736 Via Verde Ct., Santa Fe, New Mexico 87507. (*See* Doc. 1-1, Ex. F to Pl.'s Complaint.) On or about July 16, 2011, Plaintiff received notice that the mortgage servicing responsibilities for his loan were being transferred from First Horizon to Nationstar Mortgage, LLC ("Nationstar"). (Pl.'s Complaint, at ¶ 16.) On July 22, 2011, Plaintiff sent a letter to Nationstar indicating that, under the Fair Debt Collection Practices Act ("FDCPA"), he was disputing 1) the amount owed; 2) that the debt was not satisfied by the securitization of his loan; and 3) the validity of the assignment from First Horizon to Nationstar. (*See* Doc. 1-1, Ex. B to Pl.'s Complaint.) On July 27, 2011, Plaintiff received a form letter from Nationstar notifying him that the servicing of his loan – that is, the right to collect payments – was transferred from First Horizon to Nationstar effective July 15, 2011. (Doc. 1-1, Ex. C to Pl.'s Complaint.)

Thereafter, on August 4, 2011, Plaintiff sent a second letter to Nationstar, indicating that he disputed the debt that Nationstar alleged that he owed, and that Nationstar, under the FDCPA, was therefore obligated to "verify" the debt before it could be collected on. (Doc. 1-1, Ex. D to Pl.'s Complaint.) This August 4, 2011 letter also warned Nationstar that reporting inaccurate information to credit reporting agencies was a violation of the Fair Credit Reporting Act ("FCRA"). (*Id.*) In response, on August 17, 2011, Nationstar sent Plaintiff a copy of the mortgage note between Plaintiff and First Horizon; however a copy of the back of the note was not provided. (Pl.'s Complaint, at ¶21.)

On August 26, 2011, Plaintiff sent another letter to Nationstar, maintaining that the note that had been provided to Plaintiff was "unexecuted, unendorsed and unassigned" and that the

2

debt had therefore not been validated. (Doc. 1-1, Ex. M to Pl.'s Complaint.) In response, on August 31, 2011, Nationstar sent a letter to Plaintiff, enclosing materials related to the validation and origination of the mortgage loan. (Doc. 1-1, Ex. E2 to Pl.'s Complaint). Additionally, Nationstar indicated that Plaintiff's payment history appeared to be reported accurately to credit repositories. (*Id.*) On September 6, 2011, Plaintiff responded to Nationstar's August 31, 2011 letter, making further inquiries and again requesting debt validation from Nationstar. (Doc. 1-2, Ex. O to Pl.'s Complaint). Plaintiff claimed therein that Nationstar was "attempting to collect a debt that they cannot validate." (*Id.*) He requested inspection of the original note with assignments and inquired as to the securitization of the note. (*Id.*) On September 15, 2011, Nationstar sent a letter to Plaintiff in response to his August 26, 2011 letter, enclosing a "MERS Milestone," which reflected that his loan had been transferred from MetLife to Nationstar and that Nationstar was the new sub-servicer of the loan. (Doc. 1-1, Ex. N to Pl.'s Complaint).

Thereafter, on September 21, 2011, Nationstar sent a letter to Plaintiff informing him that he was in default under the terms and conditions of the Note and Security Instrument for failure to pay installments. (Doc. 1-2, Ex. Q to Pl.'s Complaint.) The letter advised Plaintiff that he had the right to cure the default by paying the sum of $3,624.07. (*Id.*)

On September 27, 2011, Nationstar sent a letter response to Plaintiff's September 6, 2011 letter and enclosed both a MERS Milestone, which indicated that Nationstar was the new servicer for First Horizon, and a Limited Power of Attorney between Nationstar and First Tennessee Bank, giving Nationstar the right to service the loan. (Doc. 1-2, Ex. I to Pl.'s Complaint). Plaintiff responded by letter, on November 7, 2011, insisting once again that Nationstar had not yet provided adequate validation of his debt. (Doc. 1-2, Ex. R to Pl.'s Complaint). Additionally, on or about January 9, 2012, Plaintiff sent a letter to Anne Sutherland,

Executive Vice President and General Counsel of Nationstar. (Doc. 1-2, Ex. S to Pl.'s Complaint). In his letter to Ms. Sutherland, Plaintiff advised that Nationstar had violated the FDCPA by reporting to credit bureaus and having a customer services representative contact him while the "matter is in dispute" (*Id.*) Plaintiff also requested various information and documentation regarding the loan, referring to his request as a "Qualified Written Request." (*Id.*) Plaintiff received no response from Ms. Sutherland. (Pl.'s Complaint, at ¶ 33.)

Finally, Plaintiff sent Nationstar a "Notice of Pending Lawsuit," on January 10, 2012 indicating that he wished to settle matters amicably with Nationstar in lieu of filing suit, and then a "Notice of Default and Cease and Desist," on or about January 18, 2012, ordering Nationstar to "Cease and Desist." (Doc. 1-2, Ex. T and U to Pl.'s Complaint.)

Thereafter, Plaintiff filed his Complaint, on February 27, 2012, alleging that Nationstar and various named employees of Nationstar, violated both the Fair Debt Collection Practices Act and the Fair Credit Reporting Act in seeking to enforce the mortgage on his property. (Doc. 1.)

## II.   LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a Rule 12(b)(6) motion to dismiss. *Mock v. T.G.&Y.*, 971 F.2d 522, 528 (10th Cir. 1992). Thus, a court assumes the veracity of the "well-pleaded factual allegations" in the complaint and draws all reasonable inferences in the plaintiff's favor. *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987). Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must contain enough facts to support a claim for relief that is plausible on its face. *Id.* at 570. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall

4

generally be treated as one for summary judgment and disposed of as provided in Rule 56. *Alexander v. Oklahoma*, 382 F.3d 1206, 1213 (10th Cir. 2004).

When a plaintiff appears *pro se*, the court reviews his pleadings and other papers liberally, holding them to a less stringent standard than those drafted by attorneys. *Trackwell v. United States Gov't*, 672 F.3d 1242, 1243 (10th Cir. 2007). Nevertheless, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### III.   ANALYSIS

#### A.   Fair Debt Collection Practices Act Claim

The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S. Ct. 1605, 1608 (2010) (citing 15 U.S.C. § 1692(e)). The Act regulates "debt collectors," and creates a private cause of action against debt collectors who do not comply with the FDCPA. 15 U.S.C. § 1692k.

Here, Plaintiff asserts that Defendants have violated the FDCPA 1) by false, deceptive and misleading representation or means in debt collection; and 2) by continuing collection activity after receiving notice of a dispute and by failing to provide written validation of the debt before resuming debt collection activities (Pl.'s Complaint, at ¶¶ 38, 43). Under § 1692e of the FDCPA, debt collectors are prohibited from using false, deceptive, or misleading representation or means in connection with debt collection. § 1692e. Additionally, under § 1692g(b), if a consumer notifies a debt collector in writing that a debt is disputed, the collector must cease debt collection until the debt collector verifies the debt and mails a copy of the verification to the

consumer.  § 1692g(b).  The FDCPA, however, does not define "debt collection."  *See Warren v. Countrywide Home Loans*, 342 Fed. Appx. 458, 460 (11th Cir. 2009).

In order for a defendant to be subject to the requirements of the FDCPA, it must be established that the defendant qualifies as a "debt collector" under the FDCPA.  *Kohout v. Bank of America Home Loans*, No. 10-cv-2811 PAB/CBS, 2001 WL 3798222, at *3 (D. Colo. July 29, 2011).  Here, Defendants argue that mortgage servicers are not "debt collectors" under the FDCPA.  Plaintiff, on the other hand, maintains that Defendants *are* debt collectors as defined in § 1692a(6).  (Pl.'s Complaint, at ¶ 38.)

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  § 1692a(6).  Significantly, the definitional provision of the FDCPA also contains explicit exclusions to the definition of a "debt collector."  *See* § 1695a(6).  For instance, the Act explicitly provides that the term "debt collector" does not include:  "Any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  § 1692a(6)(F)(iii).  Thus, the plain language of § 1692a(6) would seem to exclude Defendant Nationstar, a mortgage servicer, from the definition of "debt collector" so long as it obtained Plaintiff's debt before he was in default.

The legislative history of § 1692a(6) supports such an application of the definitional exclusion.  It provides that "debt collector," as used in the FDCPA was never intended to include "mortgage service companies and others who service outstanding debts for others, so long as the

debts were not in default when taken for servicing." S. Rep. No. 95-382, at 3-4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698.

A majority of courts have agreed, concluding that loan-servicing companies do not qualify as "debt collectors" when the debt in question was not in default at the time it was obtained by the servicer. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985); *Scott v. Wells Fargo Home Mortg, Inc.*, 326 F. Supp. 2d 709 (E.D. Va. 2003), *aff'd*, 67 Fed. Appx. 238 (4th Cir. 2003); *Ayers v. Aurora Loan Servs., LLC*, 787 F. Supp. 2d 451 (E.D. Tex. 2011); *Jara v. Aurora Loan Servs.*, 852 F. Supp. 2d 1204 (N.D. Cal. 2012); *Llewellyn v. Allstate Home Loans, Inc.*, 795 F. Supp. 2d 1210 (D. Colo. 2011); *Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367 (S. D. Fla. 2011); *see also Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx at 460 (reasoning that foreclosing on a security interest was not debt collection activity for purposes of § 1692g). *But see Shugart v. Ocwen Loan Servicing*, *LLC*, 747 F. Supp. 2d 938 (S.D. Ohio 2010) (concluding that the loan-servicer exception in the FDCPA does not *apply if the loan was in default at the time it was acquired*).

Moreover, although the Tenth Circuit Court of Appeals has not decided the issue, district courts in the circuit considering application of the FDCPA to mortgage servicers have adopted the majority rule. *See, e.g.*, *Kohout v. Bank of America Home Loans*, No. 10-cv-2811 PAB/CBS, 2001 WL 3798222, at *3 (D. Colo. July 29, 2011) (noting that "courts have consistently held that a 'debt collector' under the FDCPA does not include a creditor, mortgage servicing company, or assignees of the debt if the entity acquired the loan before it was in default"); *Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348, 1354 (D. Utah 2009) (concluding that a loan servicer "is only a 'debt collector' within the meaning of the FDCPA if it acquires the loan after it is in default"); *cf. Mondonedo v. Sallie Mae, Inc.*, No. 07-4059 JAR, 2009 WL 801784, at

\*5 (D. Kan. Mar. 25, 2009) ("The evidence is clear that Sallie Mae is a [student] loan servicer who obtained the loans originated by Wells Fargo for servicing prior to default and is exempt from liability under the FDCPA.").

Following the plain language and legislative history of § 1922a(6) as well as the majority rule, both across the nation and in the Tenth Circuit, this Court concludes that Defendant Nationstar is not a "debt collector" for purposes of the FDCPA.  Significantly, Plaintiff does not allege that Defendant Nationstar began servicing his loan after he had already defaulted on it.  Indeed, according to the Complaint and the documents that Plaintiff attached thereto, Defendant Nationstar began servicing Plaintiff's loan in July of 2011 (Exs. A & C to Pl.'s Complaint), and Plaintiff defaulted on that loan thereafter, in September of 2011.  (Ex. Q to Pl.'s Complaint.)  Apart from an allegation that the loan-servicer began servicing the loan after it was already in default, there is not a sufficient basis in law to conclude that a loan servicer is a "debt collector" subject to the FDCPA.  *See Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348 (D. Utah 2009).

Likewise, Plaintiff's FDCPA claim fails as to the individual defendants, who are alleged to be employees of Defendant Nationstar.  Plaintiff's Complaint lacks any factual allegations suggesting that these defendants are "debt collectors" or that, in their individual capacities, they have engaged in conduct that violates of the FDCPA.  Moreover, the definitional provision of the FDCPA provides that the term "debt collector" does not include "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor." §1692a(6)(A).

In sum, Plaintiff's Complaint fails to set forth any factual allegations giving rise to a plausible claim that Defendants violated the FDCPA, and, accordingly, Plaintiff fails to state a claim with regard to Count I of his Complaint.

### B.     Fair Credit Reporting Act Claim

In their Motion for Judgment on the Pleadings, Defendants argue that 1) Plaintiff did not articulate in his Complaint why Defendants' reporting was unfair and inaccurate; 2) Plaintiff has not alleged that he raised a dispute with a consumer reporting agency; and 3) Plaintiff has not alleged that a consumer reporting agency notified Defendants of a dispute.  (Def.'s Motion for Judgment on the Pleadings, at 6.)  In his response, Plaintiff does not address Defendants' contentions directly, arguing instead that "Defendants have not validated [his mortgage] debt, by any legal standards, and therefore have reported incorrect information to the various Credit Reporting Agencies."  (Pl.'s Resp., at 3.)

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, prohibits reporting inaccurate consumer credit information to consumer reporting agencies.  15 U.S.C. §1681s-2(a)(1)(A).  The FCRA places certain duties on those who furnish information to consumer reporting agencies.  *See id.*  Under § 1681s-2(a), a furnisher of information has a duty to provide accurate information.  *See* § 1681s-2(a).  Additionally, § 1681s-2(b) imposes a duty upon furnishers to conduct an investigation into the completeness and accuracy of the information furnished *upon receiving notice of a dispute* from a consumer reporting agency.  § 1681s-2(b).

Plaintiff asserts two causes of action under the FCRA against Defendants.  (Pl.'s Complaint, at 15-19.)  Count II asserts a claim for willful non-compliance with the FCRA (*id.* at ¶¶ 54-56), while Count III asserts a claim for negligent non-compliance with the FCRA (*id.* at ¶¶ 57-58). The FCRA contains provisions that create liability for both willful and negligent violations of the Act.  *See, e.g.*, § 1681n (creating civil liability for *willful* noncompliance with any portion of the FCRA); § 1681o (creating civil liability for *negligent* noncompliance with any portion of the FCRA).  However, the FCRA also provides that these liability provisions cannot

be used by a private individual to assert a claim for a violation of § 1681s-2(a), as such claims are available only to the Government.  *See* § 1681s-2(c) ("[S]ections 1681n and 1681o of this title do not apply to any violation of (1) subsection (a) of this section . . . ."); §1681s-2(d) ("The provisions of law described in paragraphs (1) through (3) of subsection (c) of this section . . . shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title.")  Thus, only § 1681s-2(b) -- the provision of the FCRA that imposes an investigatory duty upon furnishers in some circumstances -- can be enforced by a private citizen seeking to recover damages caused by the furnisher of information.  *Pinson v. Equifax Credit Information Servs.*, 316 Fed. Appx. 744, 751 (10th Cir. Mar. 10, 2009) (reasoning that the FCRA only authorizes a private cause of action for violations of § 1681s-2(b), not § 1681s-2(a)); *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); *SimmsParris v. Countrywide Financial Corp.*, 652 F.3d 355, 358 (3d. Cir. 2011); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).  Accordingly, the Court need only consider whether Plaintiff has stated a claim under § 1681s-2(b) sufficient to survive Defendant's 12(c) motion.

Although the FCRA provides a private cause of action under § 1681s-2(b), such an action is not without limits.  For example, the duties that are placed on furnishers of information by this subsection are implicated only "[a]fter receiving notice pursuant to section 1681i(a)(2) . . . of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency."  § 1681s-2(b)(1).  Notice under § 1681i(a)(2), however, must be given *by a consumer reporting agency*, and cannot come directly from the consumer.  *See* § 1681i(a)(2); *SimmsParris,* 652 F.3d at 358; *Chiang*, 595 F.3d at 35 n.8; *Gorman*, 584 F.3d at 1154.

In *Pinson*, the plaintiffs claimed that Capital One had violated § 1681s-2(b) by failing to investigate information after the plaintiffs disputed it. *Pinson*, 316 Fed. Appx. at 751. The district court dismissed the plaintiffs' claims against Capital One for failure to state a claim. *Id*. The Tenth Circuit Court of appeals noted that "[t]he duties listed in § 1681s-2(b) arise only after the furnisher receives notice of a dispute from a [consumer reporting agency]; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b) . . ." *Id*. (quoting *Gorman,* 552 F.3d at 1014 (emphasis in original).

The facts in *Pinson* are analogous to those here. Plaintiff alleges that Defendants violated the FCRA by failing to notify consumer reporting agencies that he was disputing his mortgage obligation and by failing to investigate his dispute after receiving written notice. (Pl.'s Complaint, at 15-19). However, the Court concludes that even if Plaintiff had asserted adequate factual detail to make out a claim that Defendants' reporting was unfair and inaccurate, which he has not, Plaintiff has wholly failed to assert the prerequisite facts to trigger a private right of action against Defendants under § 1681s-2(b). Again, an investigative duty and private right of action arises for a furnisher of information only *upon notice of a dispute from a consumer reporting agency*. *Pinson*, 316 Fed. Appx. at 751. Plaintiff's Complaint does not include an assertion, or even an inference, that Plaintiff disputed any information with a consumer reporting agency or that Defendants failed to investigate relevant information after receiving notice of a dispute from a consumer reporting agency. Instead, Plaintiff alleges that he notified Defendants *directly* that he disputed the subject debt. (Pl.'s Complaint, at ¶ 17.) But notice of a dispute received directly from a consumer does not trigger a furnisher's duties under § 1681s-2(b). *See Pinson,* 316 Fed. Appx. at 751. Plaintiff's FCRA claims against Defendants for willful and

11

negligent violations of the Act must therefore be dismissed for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For all of these reasons, the Court concludes that Plaintiff fails to state a cause of action against Defendants under both the Fair Debt Collection Practices Act and the Fair Credit Reporting Act.

**IT IS THEREFORE ORDERED** that Defendant Motion for Judgment on the Pleadings is hereby **GRANTED.**

_____
SENIOR UNITED STATES DISTRICT JUDGE